UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLY KACPROWICZ,<br><br>       Plaintiff,<br><br>    v.<br><br>NEW YORK-PRESBYTERIAN HOSPITAL,<br><br>       Defendant. | **Case No. 22-CV-9548**<br><br>**COMPLAINT**<br><br>**ECF CASE** |

  COMES NOW PLAINTIFF Carly Kacprowicz, by her undersigned attorneys, for her complaint against Defendant New York-Presbyterian Hospital, and alleging as follows:

## NATURE OF THE ACTION

  1. This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objection to a mandatory COVID-19 vaccination policy, wrongly denied her requested religious exemption, and as a result illegally terminated her employment. Plaintiff asserts a concurrent claim under the New Jersey Law Against Discrimination, N.J. Stat. § 10:5-1 *et seq.* This is not an action challenging the legality of the COVID-19 vaccination policy itself. By this action, Plaintiff seeks all legal and equitable relief available, including reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs. Plaintiff demands trial by jury.

1

## PARTIES

2.     Plaintiff **Carly Kacprowicz** is an adult resident of Marlton, New Jersey (Burlington County).  At all relevant times, Kacprowicz was an "employee" of Defendant within the meaning of Title VII and applicable state law.  For purposes of this action, Kacprowicz is a citizen of New Jersey.

3.     Defendant **New York-Presbyterian Hospital** ("NYPH") is a domestic not-for-profit corporation with its principal place of business in New York, New York.  Upon information and belief, at all relevant times, NYPH had more than 500 employees.  At all relevant times, NYPH was Plaintiff's "employer" within the meaning of Title VII and applicable state law.  For purposes of this action, NYPH is a citizen of New York.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

5.     This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity), because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     Alternatively, this Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, because Plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution

7.     This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant

resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

8. Plaintiff properly exhausted her administrative remedies under Title VII prior to filing this action.

9. On or about May 31, 2022, within 300 days of the alleged discriminatory acts, Kacprowicz filed a charge of discrimination against NYPH with the U.S. Equal Employment Opportunity Commission (EEOC). The charge was assigned charge number 525-2022-00974.

10. On September 17, 2022, the EEOC issued a Notice of Right to Sue, a copy of which is attached hereto as **Exhibit A**.

11. This action was filed within 90 days of Kacprowicz's receipt of the Notice of Right to Sue.

12. There are no administrative exhaustion requirements for Plaintiff's claim under the New Jersey Law Against Discrimination.

## ALLEGATIONS

13. Kacprowicz was hired by NYPH on or about January 4, 2021.

14. Kacprowicz worked as a Senior Financial Analyst in the Operational Efficiency – Finance department. Her job duties included financial data analysis, financial benchmarking quarterly, and other financial reporting. This was a full-time position.

15. From the beginning of her employment, Kacprowicz worked fully remotely, pursuant to a written telecommuting agreement signed by her supervisor.

The only day when she was physically in the office was the day she was hired, when she signed the telecommuting agreement and received her laptop computer.

16. At all relevant times, Kacprowicz was qualified for her position and performed her duties in a satisfactory manner.

17. Kacprowicz received a "Meets expectations" rating on her probationary/orientation review, covering the period from 01/04/2021 – 06/04/2021. Her supervisor's comments included "Carly demonstrates good interpersonal skills and works harmoniously with co-workers"; "Knowledge in computer fundamentals is strong"; "Carly is self-directed, proactive, motivated and eager to accept new and challenging projects"; "Carly is a welcome asset to our team."

*NYPH's COVID-19 Vaccination Policy and*
*Kacprowicz's Request for a Religious Exemption*

18. On or about June 11, 2021, NYPH announced by email that "New York-Presbyterian will be requiring all employees to get vaccinated against COVID-19 or to obtain a valid exemption." The email stated that "everyone must have their first dose of the vaccine no later than September 1, 2021." The email further stated that "compliance – either by vaccination or exemption – will be required for your continued employment."

19. On August 2, 2021, Kacprowicz submitted a request for a religious exemption to NYPH's COVID-19 vaccination policy, using the prescribed forms and following the prescribed procedures.

20. Kacprowicz is a Christian.

21. In her letter requesting a religious exemption, Kacprowicz stated: "Based on my sincerely held religious beliefs and morals, both deeply rooted in my

faith, I object to the practice of immunizations including but not limited to the currently available COVID-19 vaccinations."

22. Kacprowicz further explained:

> I believe my body is a temple for the Holy Spirit (1 Cor 6:19) and I must honor God by protecting my body/temple by not defiling it. This is a responsibility given to me by God at the time of my conception. I believe that any vaccination/vaccine technology using fetal cell lines or fetal tissues in either the development, testing phase, production, or distribution will interfere with my religious beliefs[,] and consent to administration would result in committing a sin and immoral act. The manner in which these fetal cells were originally obtained is horrifying to me, forbidden in Scripture, and completely against the sanctity of life that I believe I am required by God to uphold. Both Moderna and Pfizer vaccinations use fetal cell line HEK293 during testing, and Janssen/Johnson & Johnson uses fetal cell line PER.C6 during production. I have prayed for forgiveness for my lack of this knowledge during past vaccinations. I cannot knowingly continue to support or consent to administration of any vaccination that continues to sacrifice another human soul during development, testing or production processes/phases as this disturbing practice violates both my religious beliefs and morality. It is my belief that to treat my body as a temple for God and in order to avoid defiling it, I must abstain from any vaccinations that include but are not limited to: sacrificed human cells, carcinogens, hazardous materials, neuro-toxins, or chemical debris which would be a violation [of] my religious beliefs as well as my faith.

23. On August 24, 2021, NYPH denied Kacprowicz's request for a religious exemption to its COVID-19 vaccination policy.

24. The August 24 denial email did not provide any reasons, except for stating: "After careful review of your request for exemption from the COVID-19 vaccine due to a religious or deeply help belief, we regret to inform you that your request has been denied." The email advised Kacprowicz that she was "required to receive at least one dose of the COVID-19 vaccine by September 15, 2021." The email further advised Kacprowicz that "[i]f you feel you have additional information to support your exemption request, you have up to 7 days to complete an updated request via VaxApp."

5

25. In denying Kacprowicz's religious exemption, NYPH did not engage in the interactive process with Kacprowicz.

26. In denying Kacprowicz's religious exemption, NYPH did not question the sincerity of Kacprowicz's religious objections to the COVID-19 vaccine.

27. In denying Kacprowicz's religious exemption, NYPH did not assert that it would cause any undue hardship on the hospital.

28. In denying Kacprowicz's religious exemption, NYPH did not assert that it would cause an undue hardship on the hospital to allow her to continue working remotely from home.

29. In denying Kacprowicz's religious exemption, NYPH did not assert that allowing her to work in the office unvaccinated, while following other required COVID-19 precautions (e.g., masking, social distancing, testing), would pose any danger to the health or safety of patients and staff.

30. On August 25, 2021, Kacprowicz appealed the denial of her religious exemption. Using the VaxApp portal, she wrote: "As of today, August 25, 2021, I, Carly Kacprowicz[,] am requesting an appeal to New York-Presbyterian's denial of my religious exemption." She included another copy of her original letter with her appeal.

*New York State Department of Health*
*COVID-19 Vaccination Emergency Regulation*

31. While Kacprowicz's appeal was pending, there were several legal developments relevant to her request for a religious exemption.

32. "On August 26, 2021, New York's Department of Health, adopted an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to 'continuously require' certain of their

6

employees to be fully vaccinated against COVID-19 beginning on September 27, 2021, for 'general hospitals' and nursing homes, and on October 7, 2021, for all other 'covered entities' as defined in the Rule." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274 (2d Cir. 2021) (per curiam) ("DOH Mandate").

33. Although the DOH Mandate expressly provides for medical exemptions, it is silent on the issue of religious exemptions. "Section 2.61 is silent, however, on the employment-related actions that employers may take in response to employees who refuse to be vaccinated for religious reasons." *We the Patriots USA, supra*, at 292.

34. On September 1, 2021, NYPH emailed employees with pending requests for religious exemptions that "[l]ast week the New York State Department of Health eliminated religious exemptions to receiving the COVID-19 vaccine. . . . [W]e can no longer consider your religious exemption request from NYP's COVID-19 Vaccination Program. You are required to receive at least one dose of the COVID-19 vaccine by September 15, 2021."

35. On September 10, 2021, Kacprowicz emailed Andrew O'Brien in Human Resources requesting "an extension for my compliance of the COVID-19 vaccination and to continue working remotely as a reasonable accommodation." In support her of her request, Kacprowicz cited a potential medical problem relating to her heart, for which she was awaiting evaluation by her cardiologist (as recommended in a doctor's note from her primary care physician), as well as her interest in taking the soon-to-be-released Novavax vaccine instead of the existing COVID-19 vaccines.

36. O'Brien did not respond to Kacprowicz's email.

37. On September 14, 2021, Kacprowicz re-submitted this request, including the doctor's note, using the prescribed forms and following the prescribed procedures.

38. On September 14, 2021, literally less than two hours later, NYPH emailed Kacprowicz that "[a]fter careful review of CDC criteria for COVID-19 vaccine medical contraindications and your exemption request due to a medical condition, we regret to inform you that your request for exemption from the COID-19 vaccine has been denied." Kacprowicz appealed this denial on September 21, 2021, which was confirmed by NYPH on September 23, 2021. Note: Plaintiff is not challenging these particular decisions in this action.

39. On September 14, 2021, the DOH Mandate was temporarily stayed by the U.S. District Court for the Northern District of New York, *see Dr. A. v. Hochul*, 21-CV-1009(DNH), 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021), which TRO was converted to a preliminary injunction on October 12, 2021, *see Dr. A. v. Hochul*, 567 F. Supp.3d 362 (N.D.N.Y. 2021).[1]

40. On September 15, 2021, NYPH emailed employees with pending requests for religious exemptions that, in light of the NDNY TRO, "[u]ntil we have further guidance from the DOH or the courts, we are deferring the vaccination process deadline for anyone with a previously approved or open religious exemption request . . . ."

---

[1] The preliminary injunction staying the DOH mandate was vacated on appeal on November 4, 2021, s*ee We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (per curiam); *see also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 368 (2d Cir. 2021) (per curiam) ("clarifying" opinion issued November 12, 2021).

*Kacprowicz's Termination*

41. On October 7, 2021 – while the NDNY TRO was in effect – NYPH again denied Kacprowicz's request for a religious exemption to its COVID-19 vaccination policy.

42. The October 7 denial email did not provide any reasons, except for stating: "After careful review of your request for exemption from the COVID-19 vaccine due to a religious or deeply held belief, we regret to inform you that your request has been denied." The email advised Kacprowicz that she was "required to receive at least one dose of the COVID-19 vaccine within 7 days of this notice."

43. In denying Kacprowicz's religious exemption for a second time, NYPH did not engage in the interactive process with Kacprowicz.

44. In denying Kacprowicz's religious exemption for a second time, NYPH did not question the sincerity of Kacprowicz's religious objections to the COVID-19 vaccine.

45. In denying Kacprowicz's religious exemption for a second time, NYPH did not assert that it would cause any undue hardship on the hospital.

46. In denying Kacprowicz's religious exemption for a second time, NYPH did not assert that it would cause an undue hardship on the hospital to allow her to continue working remotely from home.

47. In denying Kacprowicz's religious exemption for a second time, NYPH did not assert that allowing her to work in the office unvaccinated, while following other required COVID-19 precautions (e.g., masking, social distancing, testing), would pose any danger to the health or safety of patients and staff.

48. Over the next several days, Kacprowicz emailed various offices to learn the reasons why her religious exemption had been denied.

49. On October 20, 2021 – while the NDNY preliminary injunction was in effect – Andrew O'Brien emailed Kacprowicz. He "apologize[d] for the delay in response," but he provided no reasons why her religious exemption had been denied. He merely stated that her request had been "carefully considered" by the hospital's religious exemption committee (made up of Human Resources, Pastoral Care, and Social Work employees) and that "the panel did not approve it." He advised Kacprowicz that "no further appeal process [is] available at this time." He closed by telling Kacprowicz that "you need to get vaccinated in order to comply with the vaccination program. If you do not do so, you will be deemed to have resigned from employment for failing to comply with a condition of employment."

50. When Kacprowicz continued to abide by her good faith religious objections to the COVID-19 vaccination policy, she was terminated effective October 25, 2021, "due to your non-compliance with the [COVID-19 Vaccination] Program, which was a condition of continued employment."

51. Following her termination by NYPH, Kacprowicz diligently pursued alternative employment.

52. On or about January 24, 2022, Kacprowicz obtained a new position as a health care analyst for a company that granted her religious exemption to its COVID-19 vaccination policy and allows her to work remotely.

53. This entire experience has caused Kacprowicz significant mental and emotional distress and personal and financial hardship.

*NYPH's Position Statement*

54. On or about July 1, 2022, NYPH submitted a position statement in response to Kacprowicz's EEOC charge.

55. The focus of NYPH's defense to Kacprowicz's charge was that "Ms. Kacprowicz's stated religious objection to vaccination conflicts with a requirement imposed by state law, not by the Hospital, which does not entitle her to relief under Title VII." That is, the DOH Mandate prohibits religious exemptions and "the Hospital had no legal obligation to provide an accommodation because doing so would have violated state law . . . ."

56. NYPH never informed Kacprowicz that the hospital was prohibited by the DOH Mandate from approving her religious exemption. This is a post-hoc justification offered for the first time in defense of this lawsuit.

57. NYPH also argued in its position statement that "accommodating Ms. Kacprowicz by allowing her to remain in her same role unvaccinated would have increased safety risks for NYPH patients, visitors, and staff, with whom she is expected to regularly interact."

58. NYPH never informed Kacprowicz that allowing her to work in the office unvaccinated, while following other required COVID-19 precautions (e.g., masking, social distancing, testing), would pose any danger to the health or safety of patients and staff. Furthermore, as a financial analyst, Kacprowicz did not interact with patients. This is a post-hoc justification offered for the first time in defense of this lawsuit.

59. Lastly, NYPH argued that the hospital was not required to offer remote work as an accommodation for Kacprowicz because this "would have rendered her unable to perform essential in-person duties and imposed more than a *de minimis* cost on NYPH."

60. NYPH never informed Kacprowicz that allowing her to work remotely would have rendered her unable to perform the essential functions of her position or

11

imposed an undue hardship on the hospital. Indeed, she was able to perform her job effectively for approximately 10 months while working fully remotely. This is a post-hoc justification offered for the first time in defense of this lawsuit.

*DOH Mandate Does Not Preclude Religious Exemptions*

61. NYPH's understanding of the DOH Mandate is legally erroneous.

62. It does not violate the DOH Mandate for a covered entity to grant a covered employee a religious exemption to the COVID-19 vaccination requirement in accordance with federal and state equal employment opportunity laws.

63. The DOH Mandate does not prohibit religious exemptions; rather, it is silent on the issue of religious exemptions.

64. Although the DOH Mandate expressly provides for medical exemptions, nowhere does it state (in sum or substance) that "only" medical exemptions are allowed.

65. The DOH Mandate does not purport to preempt the rights and protections afforded employees under federal and state equal employment opportunity laws.

66. On the contrary, in the "Regulatory Impact Statement" accompanying the emergency regulation, the DOH expressly noted that "[t]his regulation will not conflict with any state or federal rules."

67. Furthermore, on November 15, 2021, the Department of Health issued a "Dear Administrator Letter" that stated the DOH's position on this issue.

68. The Letter still is posted on the Department of Health's website and has not been retracted or rescinded.

69. The Letter is addressed to "Chief Executive Officers, Nursing Home Operators and Administrators, Adult Care Facility Administrators, and Home Care and Hospice Administrators."

70. The Letter begins by reiterating the COVID-19 vaccination requirement and stating that, beginning November 22, 2021, it applies to covered employees who were previously granted religious exemptions. But then the Letter directs: "Facilities should have a process in place to consider reasonable accommodation requests from covered personnel based on sincerely held religious beliefs consistent with applicable Federal and State laws, including Equal Employment Opportunity (EEO) laws such as Title VII of the Civil Rights Act and the NYS Human Rights Law, and their applicable guidance."

71. The Letter makes clear that the Department of Health does not consider the COVID-19 vaccination mandate to be inconsistent with federal and state EEO laws that require reasonable accommodations for employees' sincerely held religious beliefs. Furthermore, the Letter provides no limitations or restrictions on how covered entities may comply with their obligations under federal and state EEO laws. Notably, the Letter makes no reference to the Second Circuit's decisions in *We the Patriots USA*, *supra* note 1.

72. The EEOC has published extensive guidance relating to COVID-19 (which the "Dear Administrator Letter" instructs healthcare facilities to consider). In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws," (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to

13

> a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

*Id.* § K.2 (Vaccinations – Overview). These are precisely the reasonable accommodations at issue here – telework and/or masking, social distancing, and testing – that Kacprowicz could have followed in lieu of the COVID-19 vaccine.

73. Upon information and belief, the New York Department of Health never has issued any guidance or directives to covered entities that they may not grant religious exemptions in accordance with federal and state EEO laws.

74. Upon information and belief, the New York Department of Health never has issued any guidance or directives to covered entities that employees who have been granted religious exemptions in accordance with federal and state EEO laws may not work onsite or engage in direct patient care activities.

75. Upon information and belief, since August 26, 2021, and continuing to the present, unvaccinated health care workers with pending or approved religious exemptions have been working onsite and/or engaging in direct patient care activities in health care facilities throughout New York.

76. Upon information and belief, since August 26, 2021, and continuing to the present, the New York Department of Health never has penalized a covered entity for allowing unvaccinated health care workers with pending or approved religious exemptions to work onsite and/or engage in direct patient care activities.

*No Undue Risk to Patients and Staff*

77. It would not have caused an undue risk to patients and staff of catching COVID-19 to allow Kacprowicz to work onsite unvaccinated, while

14

following other required COVID-19 precautions (e.g., masking, social distancing, testing), as an alternative to telework.

78. Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be less virulent than previous waves have been.

79. Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines do not prevent the transmission of the virus.

80. On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it. But what they can't do anymore is prevent transmission."

81. This was confirmed recently by Dr. Deborah Birx, former White House Coronavirus Response Coordinator, who told Fox News on July 22, 2022, that she "knew these vaccines were not going to protect against infection. . . ."

82. Even Dr. Anthony Fauci has admitted, during an interview with Fox News on July 12, 2022, that the "vaccines – because of the high degree of transmissibility of this virus – don't protect overly well, as it were, against infection . . . ."

83. Indeed, a senior Pfizer executive recently admitted during a parliamentary hearing that the company did not know whether or not its COVID-19 vaccine prevented transmission of the virus when the vaccine was first rolled out.

84. The DOH Mandate contains an express medical exemption provision, pursuant to which "any reasonable accommodation may be granted . . . ." 10 N.Y.C.R.R. § 2.61(d)(1).

85. Significantly, the DOH Mandate imposes no workplace limitations on employees who receive medical exemptions.

86. According to the New York Department of Health, therefore, an unvaccinated employee who is granted a *medical* exemption does *not* pose an unacceptable risk of spreading COVID-19 to other employees or patients.

87. It would be pure speculation, indeed irrational, for NYPH to argue that an unvaccinated employee who is granted a *religious* exemption *does* pose an unacceptable risk of spreading COVID-19 to other employees or patients.

88. Indeed, it is possible that unvaccinated employees who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious, and therefore can self-quarantine and consequently will be less likely to transmit the virus unknowingly, than vaccinated employees who do not undergo regular testing.

89. In short, there is no objective, scientific basis for NYPH to argue that granting Kacprowicz's religious exemption and allowing her to work onsite unvaccinated, while following other required COVID-19 precautions (e.g., masking, social distancing, testing), would have posed an undue risk to patients and staff of becoming sick from COVID-19. This is pure speculation and fear-mongering.

**COUNT ONE: VIOLATION OF TITLE VII**

90. By denying her religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Plaintiff's rights under Title VII, including by failing to engage in the interactive process and failing to allow Kacprowicz to work remotely and/or onsite.

91. Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

92. Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of her employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

93. Defendant was recklessly indifferent to Kacprowicz's federally protected rights.

94. As a direct and proximate result of Defendant's discriminatory conduct, Kacprowicz has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which she is entitled

to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT TWO: VIOLATION OF LAW AGAINST DISCRIMINATION

95. By denying her religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment, Defendant violated Plaintiff's rights under Title VII, including by failing to engage in the interactive process and failing to allow Kacprowicz to work remotely and/or onsite.

96. The New Jersey Law Against Discrimination provides, *inter alia*, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the . . . creed . . . of any individual . . . to discharge . . . from employment such individual or to discriminate against such individual . . . in terms, conditions or privileges of employment . . . ." N.J. Stat. § 10:5-12(a). The Law Against Discrimination further provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require a person to violate or forego a sincerely held religious practice or religious observance . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 10:5-12(q).

97. Defendant was recklessly indifferent to Kacprowicz's state law rights.

98. As a direct and proximate result of Defendant's discriminatory conduct, Kacprowicz has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which she is entitled

to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on her claims under Title VII and the New Jersey Law Against Discrimination, and award her the following relief:

A. Reinstatement to the same or equivalent position;
B. Back pay in an amount to be determined at trial;
C. Front pay in an amount to be determined at trial;
D. Out of pocket costs in an amount to be determined at trial;
E. Compensatory damages in an amount to be determined at trial;
F. Punitive damages in an amount to be determined at trial;
G. Pre-judgment and post-judgment interest;
H. Attorney's fees and costs;
I. Appropriate injunctive relief; and
J. Such other relief as justice may require.

*For Plaintiff Carly Kacprowicz:*

/s/ *Steven M. Warshawsky*
_____

Steven M. Warshawsky
The Warshawsky Law Firm
118 North Bedford Road, Suite 100
Mount Kisco, NY  10549
Tel:  (914) 864-3353
Email: smw@warshawskylawfirm.com
Web:  www.warshawskylawfirm.com

Andrea Paparella
Law Office of Andrea Paparella, PLLC
(pandemic mailing address)
4 Dunlap Street
Salem, MA  01970
Tel:  (617) 680-2400
Fax:  (914) 462-3287
Email:  amp@andreaparella.com
Web: www.andreaparella.com

Dated:  November 8, 2022